# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| NAUTILUS INSURANCE | § | |
| COMPANY a/s/o LARIAT | § | |
| BUILDERS GROUP | § | |
| CORPORATION, | § | |
|     Plaintiff, | § | |
| | § | EP-18-CV-320-PRM |
| v. | § | |
| | § | |
| A BEST AMERICAN | § | |
| ROOFING, LLC, | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ENTRY OF DEFAULT JUDGMENT

On this day, the Court considered Plaintiff Nautilus Insurance Company a/s/o Lariat Builders Group Corporation's [hereinafter "Plaintiff"] "Motion for Entry of Default Judgment" (ECF No. 16) [hereinafter "Motion"], filed on February 25, 2019; Plaintiff's "Supplemental Brief in Support of Causes of Action" (ECF No. 19) [hereinafter "Supplemental Brief"], filed on March 18, 2019; and Plaintiff's "Affidavit in Support of Claim for Damages" (ECF No. 22) [hereinafter "Affidavit"], filed on March 28, 2019, in the above-captioned cause. After due consideration, the Court is of the opinion that the Motion should be granted in part, with respect to Plaintiff's negligence claim, and

denied in part, with respect to Plaintiff's breach of warranty claim, for the reasons that follow.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 26, 2018, Plaintiff filed its Complaint, bringing negligence, gross negligence, and breach of warranty claims against Defendant in connection with the roofing services that Defendant provided. Compl., ECF No. 1. Plaintiff is an insurance company that issued a policy of insurance to Lariat Builders Group Corporation. *Id.* at 1. Plaintiff's insured, Lariat Builders Group Corporation, entered into a contract with Immanuel Baptist Church ("the Church") to provide certain services, including roof replacement of the commercial property located at 1201 Hawkins, El Paso, TX. Compl. Ex. A. As a General Contractor, Plaintiff's insured entered into a Sub-Contractor Agreement with Defendant, wherein Defendant, as a Sub-Contractor, agreed to perform roofing services for the Church's property. Compl. 2; Compl. Ex. A.

Plaintiff alleges that the roofing work commenced on a date prior to July 7, 2017. *Id.* On July 7, 2017, heavy rainfall caused water to enter the Church, "resulting in subsequent damage to several areas of the church, including the gym, cafeteria, two classrooms, a chapel and office

areas." *Id.* According to Plaintiff, the water damage "was due to [Defendant]'s failure to properly secure the roof prior to the rain storm." *Id.* at 3. Accordingly, Plaintiff alleges that its insured "sustained damages and other related expenses in the amount of $77,183.13." *Id.* Plaintiff further alleges that "[p]ursuant to its policy of insurance with its insured, [Plaintiff] has paid to its insured, and on their behalf, in the amount of $77,183.13 and has become legally, contractually and equitably subrogated to the rights of its insureds to the extent of such payments." *Id.* at 3. Based on these allegations, Plaintiff brings claims of negligence, gross negligence, and breach of warranty against Defendant, seeking damages, interest, costs of suit, and exemplary damages. Compl. 3–6.

On November 19, 2018, Plaintiff served summons on Elena Hart, an individual designated by law to accept service of process on behalf of Defendant. Summons Returned Executed, Dec. 20, 2018, ECF No. 5. On January 29, 2019, the Court issued its "Order to Show Cause," ordering Plaintiff to show cause as to why Plaintiff had not moved for an entry of default against Defendant. Order to Show Cause, ECF No. 13. On January 30, 2019, Plaintiff filed its "Request for Entry of Default." ECF No. 14. As Defendant failed to appear or answer the Complaint within

3

the time allowed by law, the Clerk entered default on February 7, 2019. Entry of Default by District Clerk, ECF No. 15. On February 25, 2019, Plaintiff filed its Motion and moved for entry of default judgment. The Court requested that Plaintiff provide documents in support of Plaintiff's damages claims and supplemental briefing citing applicable case law and demonstrating how Plaintiff's factual allegations support Plaintiff's causes of action. Order Req. Doc. in Supp. of Pl.'s Mot. for Entry of Default J., Mar. 14, 2019, ECF No. 18. Accordingly, on March 18, 2019, Plaintiff filed its Supplemental Brief. Therein, Plaintiff "respectfully withdraws its claims of gross negligence and its request for exemplary damages" due to Plaintiff's inability to engage in discovery to obtain evidence necessary to support Plaintiff's gross negligence claim. Suppl. Br. 4. In addition, on March 28, 2019, Plaintiff filed its Affidavit, which details the basis for Plaintiff's damages claim and provides documents in support of those damages.

## II. LEGAL STANDARD

Plaintiff must establish three elements to obtain a default judgment: (1) default; (2) entry of default; and (3) default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

4

A default occurs when "a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *Id.* The clerk of the court will enter an entry of default when default is established by affidavit or otherwise. *Id.* (citing Fed. R. Civ. P. 55(a)). After the clerk's entry of default, "a plaintiff may apply for a judgment based on such default. This is a *default judgment*." *Id.*

Defendant has not appeared. Consequently, the Clerk of the Court entered default. *See* Entry of Default by District Clerk, Feb. 7, 2019, ECF No. 15. Therefore, the Court must determine whether default judgment is appropriate.

Courts have developed a two-part analysis in determining whether a default judgment should be entered against a defendant. *See, e.g., Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C–10–390, 2011 WL 4738197, at *2–3 (S.D. Tex. Oct. 5, 2011). First, the Court must consider whether the entry of default judgment is appropriate under the circumstances. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The Court looks to the following factors to determine whether a default judgment is appropriate:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds

for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

Second, the Court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment. *See Nishimatsu Const. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact. . . ." *Id.* Although the defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* A complaint is "well-pleaded" and suffices to support a default judgment if the allegations satisfy the requirements of Federal Rule of Civil Procedure 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Specifically, the factual allegations "need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "'[D]etailed factual allegations' are not required, but the pleading must present 'more than an unadorned,

the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Fifth Circuit has often cautioned that "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Savings Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). Indeed, such orders are "available only when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala*, 874 F.2d at 276 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Thus, as the decision to enter a default judgment lies within the discretion of the district judge, a "party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis*, 236 F.3d at 767 (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)).

## III. ANALYSIS

### A.   Default Judgment Factors

In deciding whether default judgment is appropriate in this case, the Court first considers the six factors outlined in *Lindsey*. The Court finds that these factors all weigh in favor of a default judgment.

First, no material issues of fact exist because Defendant failed to respond or plead. Second, Defendant does not incur substantial prejudice because it failed to contest any of the allegations. The Court accepts Defendant's silence as an admission that Plaintiff's allegations are true. *See Nishimatsu Const.*, 515 F.2d at 1206 (noting that a "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Since Defendant admits the allegations against it, it does not face any prejudice. Conversely, substantial prejudice exists against Plaintiff given that Defendant's silence has halted the adversarial process. For example, Plaintiff was unable to obtain discovery from Defendant. *See* Suppl. Br. 4 (withdrawing gross negligence claim and request for exemplary damages in light of Plaintiff's inability to engage in discovery). Third, Plaintiff's service and Defendant's failure to appear establish grounds for default judgment. Fourth, Defendant has failed to claim the presence of a good

8

faith mistake or excusable neglect. Fifth, the lack of any apparent defenses or excuses for Defendant's default makes this a reasonable default judgment. Nothing about the circumstances of this request or the amount claimed makes this judgment particularly "harsh." Sixth, and finally, while the entry of the default judgment is extreme and not favored by the Federal Rules, the Court is unaware of good cause to set aside the default given Defendant's failure to answer or otherwise respond. Consequently, the *Lindsey* factors weigh in favor of default. *See Lindsey*, 161 F.3d at 893.

## B.     Plaintiff's Pleadings

The Court recognizes that "a defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu Const.*, 515 F.2d at 1206. Rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Id.* The Court finds that this requirement is satisfied for Plaintiff's negligence claim but is not satisfied for Plaintiff's breach of warranty claim for the following reasons.

### 1.     Plaintiff's Status as Subrogee

Plaintiff is an insurance company and brings this action as subrogee of its insured, Lariat Builders Group Corporation. *See* Compl. 1.

9

"Insurers may have either 'contractual' subrogation rights, which arise from contract language, or 'equitable' subrogation rights, which exist in equity to prevent the insured from receiving a double recovery to the insurer's detriment." *Concierge Nursing Centers, Inc. v. Antex Roofing, Inc.*, 433 S.W.3d 37, 44 (Tex. App. 2013) (citing *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 647 (Tex. 2007)). "Either way, 'the principle of subrogation provides that once an insured is made whole from his damages, the insurer that has paid for the insured's covered losses is entitled to the insured's rights and remedies against a third party for the covered losses.'" *Id.* (quoting *Osborne v. Jauregui, Inc.*, 252 S.W.3d 70, 78 (Tex. App. 2008)). "Generally, rights conferred by subrogation are entirely derivative of the subrogor's interests, to which the subrogee merely succeeds." *Id.* at 45 (quoting *Guillot v. Hix*, 838 S.W.2d 230, 232 (Tex. 1992)). "When an insurer pays out on its insured's loss, it becomes a 'pro tanto owner' of the cause of action. This means that the insurer receives 'the rights of its insured to the extent of payments made under the insurance contract.'" *Id.* (internal citations omitted) (first citing *Thoreson v. Thompson*, 431 S.W.2d 341, 347 (Tex. 1968); and then citing *Warwick Towers Council of Co-Owners ex rel. St. Paul Fire & Marine Ins. Co. v.*

*Park Warwick, L.P.*, 298 S.W.3d 436, 440 (Tex. App. 2009); and then

quoting *Rushing v. Int'l Aviation Underwriters, Inc.*, 604 S.W.2d 239, 243

(Tex. Civ. App. 1980), *writ refused NRE* (Dec. 17, 1980)). Accordingly,

"the insurer as subrogee does not own the entire claim as if the claim were

wholly transferred by an assignment; it has only the right to recover an

amount equal to its payment under the insurance policy." *Id.* (citing

*Rushing*, 604 S.W.2d at 244).

Here, Plaintiff alleges that "[p]ursuant to its policy of insurance with

its insured, [Plaintiff] has paid to its insured, and on their behalf, in the

amount of $77,183.13 and has become legally, contractually and equitably

subrogated to the rights of its insureds to the extent of such payments."

*Id.* at 3. Accordingly, accepting Plaintiff's well-pleaded allegations as

true, Plaintiff has sufficiently pleaded its status as subrogee of its

insured, Lariat Builders Group Corporation. Plaintiff's status as subrogee

is further supported by the copy of its insurance policy with the insured.

*See* Aff. Ex. D. Therefore, Plaintiff is the "pro tanto" owner of its insured's

cause of action and may seek to recover an amount equal to its payment to

its insured to the extent that its insured would have a cause of action

against Defendant.

11

2.  <u>Negligence</u>

"Negligence actions in Texas require 'a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach.'" *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (quoting *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)). Texas courts "have recognized that a duty to use reasonable care may arise when a person undertakes to provide services to another, either gratuitously or for compensation." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). Additionally, Texas courts have "observed that a common law duty to perform with care and skill accompanies every contract and that the failure to meet this implied standard might provide a basis for recovery in tort, contract, or both under appropriate circumstances." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citing *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 157, 204 S.W.2d 508, 510 (1947)).

"[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.* (first citing *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 242 (Tex. 2014);

12

and then citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991)). In *Chapman Custom Homes*, the Texas Supreme Court held that the plaintiff homeowner properly stated a negligence claim against a plumber when "[t]he plumber's duty not to flood or otherwise damage the house [was] independent of any obligation undertaken in its plumbing subcontract with the builder, and the damages allegedly caused by the breach of that duty extend[ed] beyond the economic loss of any anticipated benefit under the plumbing contract." *Chapman Custom Homes, Inc.*, 445 S.W.3d at 718–19.

Here, Plaintiff's well-pleaded factual allegations sufficiently support a negligence cause of action. First, Plaintiff alleges that Defendant "had a duty to persons such as Plaintiff's insured to exercise due care in taking reasonable and necessary actions to provide proper weather protection so as to avoid causing water and other damages." Compl. 3. Plaintiff further explains in its Supplemental Brief that, like the plumber in *Chapman Custom Homes, Inc.*, Defendant "assumed an implied duty not to flood or otherwise cause water damage [to] the church while performing its contract with the Plaintiff's insured." Suppl. Br. 3 (citing *Chapman Custom Homes, Inc.*, 445 S.W.3d at 717–18).

Furthermore, Plaintiff alleges that Defendant failed to take "reasonable" and "necessary" "actions to properly protect the roof from heavy rain fall"; failed to "properly [provide] roofing services in a reasonable manner"; and failed to "provide weather protection so as to avoid the risk of water damage." Compl. 3–4. Plaintiff contends that Defendant's failure to prevent water damage to the Church while Defendant performed its contract "constituted a breach of its duty." Suppl. Br. 3. Finally, Plaintiff alleges that Defendant's negligent conduct was the proximate cause of the resulting damage to the Church and the subsequent damages suffered by Plaintiff. Compl. 4.

The Court finds that Plaintiff's allegations are well-pleaded, as they raise Plaintiff's right to relief on Plaintiff's negligence claim above the speculative level and are "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Wooten*, 788 F.3d at 498 (quoting *Iqbal*, 556 U.S. at 678). Accordingly, Defendant is deemed to have admitted Plaintiff's well-pleaded allegations. *See Nishimatsu*, 515 F.2d at 1206. Thus, Plaintiff's allegations support a negligence cause of action: Defendant had a duty to exercise reasonable care in performing its contract with Plaintiff's insured, Defendant breached that duty by failing

14

to properly protect the roof from rain fall, and Defendant's breach of its duty caused damages to Plaintiff's insured. Accordingly, the Court finds sufficient basis in the pleadings for default judgment on Plaintiff's negligence claim.

### 3. Breach of Warranty

In addition, Plaintiff brings a breach of warranty claim against Defendant, alleging that "Defendant implied that the roofing work would be performed in a workmanlike manner and with the necessary knowledge, skill, care and ability" and that "Plaintiff relied on Defendant's skills, judgment and implied warranties of fitness and merchantability, as well as the other warranties made by Defendant, with respect to the roofing work." Compl. 5. Plaintiff's Motion and Supplemental Brief do not put forth additional support or authority for Plaintiff's breach of warranty claim. After due consideration, the Court concludes that Plaintiff fails to establish that Defendant breached the implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner. Furthermore, Plaintiff has not established the existence of an implied warranty to perform roof replacement services in a good and workmanlike manner. Finally,

15

Plaintiff has not demonstrated that Defendant breached the implied warranties of fitness and merchantability.

### i. Implied Warranty to Repair or Modify Existing Tangible Goods in Good and Workmanlike Manner

"The Supreme Court of Texas has, at times, 'recognized an implied warranty for services only when the services relate to the repair or modification of existing tangible goods or property.'" *Shakeri v. ADT Sec. Servs.*, Inc., 816 F.3d 283, 294 (5th Cir. 2016) (quoting *Rocky Mountain Helicopters, Inc. v. Lubbock Cty. Hosp. Dist.*, 987 S.W.2d 50, 52–53 (Tex. 1998)); *see Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987) (recognizing "an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner").

The following are the elements of a cause of action for breach of the implied warranty of good and workmanlike performance of services:

1. The defendant sold services to the plaintiff.
2. The services consisted of the repair or modification of the plaintiff's existing tangible goods or property.
3. The defendant did not perform the services in a good and workmanlike manner.
4. The plaintiff suffered injury.

O'CONNOR'S TEXAS CAUSES OF ACTION 1172 (2019) (first citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438–39 & n.3 (Tex. 1995); then citing

*Archibald v. Act III Arabians*, 755 S.W.2d 84, 85 (Tex. 1988); and then citing *Melody Home*, 741 S.W.2d at 354).

Here, Defendant sold services to Plaintiff's insured. Specifically, Defendant agreed to provide a "[c]omplete layover of all roof sections of the church building" in exchange for payment by Plaintiff's insured. *See* Compl. Ex. A, at 2.

However, Plaintiff does not establish that such services constitute a repair or modification of Plaintiff's existing tangible goods or property and therefore imply a warranty of good and workmanlike performance of services pursuant to Texas law. *See Melody Home*, 741 S.W.2d at 354. First, Plaintiff has not alleged that the property—Immanuel Baptist Church—belonged to Plaintiff's insured. Rather, Plaintiff's insured merely contracted with the property owner to provide certain contract work, including the roof replacement services. *See* Compl. Ex. A. Accordingly, the roof replacement services were not performed on Plaintiff's, or Plaintiff's insured's, tangible goods or property. Furthermore, Plaintiff has not established that a general contractor can bring a breach of implied warranty claim in connection with services performed on a third party's property.

17

Additionally, Plaintiff has not established that the roof replacement amounts to a repair or modification pursuant to Texas law. "A repair is the restoration of something by replacing a part or fixing what is broken." O'CONNOR'S TEXAS CAUSES OF ACTION 1174 (2019) (citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1055 (11th ed. 2003)). "[T]he term 'modification' broadly includes any change or alteration that 'introduces new elements into the details [of the subject matter] or cancels some of them' but which leaves 'the general purpose and effect of the subject matter intact.'" *Archibald*, 755 S.W.2d at 86. Here, Plaintiff has not alleged that the roof was previously broken, nor indicated that the replacement involved introducing new elements into the details of the roof. Accordingly, the Court is unable to conclude that Defendant's services were a repair or modification such that they implied a warranty pursuant to Texas law.

In sum, Plaintiff's allegations do not sufficiently establish a cause of action for breach of the implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner.

*Implied Warranty to Perform Roof Replacement Services in Good and Workmanlike Manner*

To the extent that Plaintiff relies on an implied warranty to perform roof replacement services in a good and workmanlike manner—independent of the warranty to perform repair or modification services in a good and workmanlike manner—the Court is not persuaded. Plaintiff does not cite authority demonstrating that Texas courts have recognized the existence of an implied warranty to perform roof replacement services in a good and workmanlike manner. Additionally, the Court is not persuaded that Texas courts would recognize such a warranty, as Plaintiff has other adequate remedies.

"[I]mplied warranties that 'services will be performed in a good and workmanlike manner' will generally only 'arise under the common law when public policy mandates.'" *Shakeri*, 816 F.3d at 294 (quoting *Rocky Mountain Helicopters*, 987 S.W.2d at 53). "Public policy does not justify imposing an implied warranty for service transactions in the absence of a demonstrated, compelling need" and "[t]here is no compelling need for an implied warranty when other adequate remedies are available to the consumer." *Rocky Mountain Helicopters*, 987 S.W.2d at 53 (first citing

*Parkway Co. v. Woodruff*, 901 S.W.2d 434, 440 (Tex. 1995); and then citing *Dennis v. Allison*, 698 S.W.2d 94, 96–97 (Tex. 1985)).

In *Rocky Mountain Helicopters*, the Supreme Court of Texas held that "Texas law does not recognize an implied warranty that services incidental to helicopter maintenance will be performed in a good and workmanlike manner" when the plaintiff had obtained a negligence finding against the Defendant and breach of contract remedies were conceivably available. *Id.* Similarly, in *Shakeri*, the Fifth Circuit held that Texas courts would not recognize an implied warranty in the repair and modification of an alarm system when the plaintiffs had adequate remedies in negligence and breach of contract causes of action. 816 F.3d at 294–95.

To the extent that Plaintiff asserts that an implied warranty to perform roof replacement services in a good and workmanlike manner exists, the Court is not persuaded that public policy mandates the imposition of such an implied warranty. "There is no compelling need for an implied warranty when other adequate remedies are available to the consumer." *Rocky Mountain Helicopters*, 987 S.W.2d at 53. As detailed above, Plaintiff has established that Plaintiff is entitled to default

20

judgment on its negligence claim. Accordingly, as there are other adequate remedies available to Plaintiff, there is no compelling need to recognize an implied warranty to perform roof replacement places in a good and workmanlike manner.

    *iii.*      *Implied Warranties of Fitness and Merchantability*

Finally, Plaintiff claims that Plaintiff relied on Defendant's "implied warranties of fitness and merchantability . . . with respect to the roofing work." Compl. 5. The implied warranties of fitness and merchantability apply to the sale of goods. *See* Tex. Bus. & Com. Code Ann. § 2.315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment . . . , there is . . . an implied warranty that the goods shall be fit for such purpose."); Tex. Bus. & Com. Code Ann. § 2.314 ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."). Here, the contract between Plaintiff's insured and Defendant is for Defendant's roof replacement services and does not involve the purchase of goods from Defendant. Compl. Ex. A, at 3. Specifically, the contract provides that "General Contractor [Plaintiff's

insured] shall furnish all necessary materials for the completion of the job, and Subcontractor [Defendant] shall not provide any materials." *Id.* Accordingly, Plaintiff has not adequately established a breach of the implied warranties of fitness and merchantability.

In sum, Plaintiff has failed to establish that Plaintiff's factual allegations demonstrate a breach of warranty. Accordingly, based on the allegations in Plaintiff's Complaint, the Court declines to enter default judgment on Plaintiff's breach of warranty cause of action.

## C. Damages

Plaintiff seeks damages in the amount of $77,183.13, as well as the costs of suit, prejudgment interest, and post-judgment interest. Compl. 5–6.

Federal Rule of Civil Procedure 55(b)(2) authorizes a district court to hold a hearing for the purpose of entering default judgment if necessary to "conduct an accounting" or "determine the amount of damages." "As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). However, an exception is made "where the amount claimed is a liquidated sum or one capable of

mathematical calculation." *Id.* "If the damages can be computed with certainty by reference to the pleadings and supporting documents alone, an evidentiary hearing may not be necessary." *Frame v. S-H, Inc.*, 967 F.2d 194, 204 (5th Cir. 1992); *see J&J Sports Prods., Inc. v. Gongora*, No. 7:16-CV-00476, 2016 WL 6835288, at *1 (S.D. Tex. Nov. 21, 2016) ("[A] district court may rely on detailed affidavits establishing the necessary facts, particularly when 'the amount claimed is a liquidated sum or one capable of mathematical calculation.'") (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). In such a circumstance, "[a]n evidentiary hearing would . . . reveal[ ] no pertinent information." *James*, 6 F.3d at 311.

Here, Plaintiff has filed a detailed affidavit and documents that establish the necessary facts in support of Plaintiff's claim for damages. *See* Aff. Based on these documents, the Court determines that the damages can be computed with certainty and, therefore, an evidentiary hearing is not necessary.

### 1. Actual Damages

Plaintiff demands judgment against Defendant for damages in the amount of $77,183.13. Compl. 5. In support of Plaintiff's damages claim,

Plaintiff has filed its Affidavit and accompanying Exhibits. The Exhibits include a Certified Weather Report, which indicates that "[a] brief light rain shower occurred between 5 and 5:15 PM" at the Church location (1201 Hawkins, Blvd. in El Paso, TX) on July 7, 2017. Aff. Ex. B, at 2. In addition, Plaintiff filed an estimate of damage by Frontier Adjusters of El Paso, which estimates the costs of repairs and provides photographs of the damage to the Church. Aff. Ex. C.

Plaintiff explains that Plaintiff paid the Church $77,183.13 on behalf of its insured as a result of the damages sustained to the Church. Aff. 2. In support, Plaintiff attaches a copy of a check evidencing payment to Immanuel Baptist Church in the amount of $77,183.13. *Id.* Ex. H. In addition, Plaintiff submits a "Property Damage Release," which reflects the release of "Lariat Builders Group Corporation [and] Nautilus Insurance Company" from claims related to the occurrence on July 7, 2017, at the Church "for sole consideration of Seventy Seven Thousand One Hundred Eighty Three Dollars and 13/100 Cents ($77,183.13) to be paid to Immanuel Baptist Church." *Id.* at 2.

Additionally, Plaintiff details the specific basis for the total damages figure of $77,183.13 as follows:

24

- $7,500.00 for Immanuel Baptist Church's leasing of gym and volleyball courts from NOFVBC LLC, for three (3) months, due to the inability to use the Immanuel Baptist Church's facility. *See* Gym Lease, attached . . . as **Exhibit I**.
- $65,077.28 for damages to Immanuel Baptist Church's gym floor. *See* Frontier Adjusters Estimate with Photographs, attached . . . as **Exhibit C**, at 2.
- $4,605.85 for damages to Immanuel Baptist Church's Sanctuary Stage and Seating Area, including labor minimum. *See* Frontier Adjusters Estimate with Photographs, attached . . . as **Exhibit C**, at 2-4.

Aff. 3. In addition, Plaintiff provides documents evidencing each of the damages, including the Gym Lease and the Frontier Adjusters Estimate with Photographs. Aff. Exs. I, C.

Accordingly, the Court determines that Plaintiff's detailed affidavit and Plaintiff's evidence support damages in the amount of $77,183.13.

### 2. Costs

Plaintiff also requests an award of costs. Compl. 6. Regarding costs, Federal Rule of Civil Procedure 54(d)(1) instructs that "costs . . . should be allowed to the prevailing party." Plaintiff constitutes a "prevailing party," as that term is employed in Rule 54, as it has "obtain[ed] actual relief, such as an enforceable judgment . . . that materially alters the legal relationship between the parties[ ] and . . . modifies the defendant's

behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008) (quoting *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006)).

The Court will consequently tax costs against Defendant. Pursuant to Local Court Rule CV-54(a), Plaintiff must "prepare and file a proposed bill of costs no later than 14 days after the entry of judgment," and serve its bill of costs on Defendant. *See* Local Court Rule CV-54(a). Defendant must file any objection to Plaintiff's bill of costs within fourteen days. *Id.*

### 3. Prejudgment Interest

In addition, Plaintiff requests prejudgment interest. Compl. 6. "Under 28 U.S.C. § 1961(a), in diversity cases, post-judgment interest is calculated at the federal rate, while pre-judgment interest is calculated under state law." *Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (citing *Nissho–Iwai Co. v. Occidental Crude Sales*, 848 F.2d 613 (5th Cir. 1988)). The Texas Finance Code provides for prejudgment interest for "[a] judgment in a wrongful death, personal injury, or property damage case." Tex. Fin. Code Ann. § 304.102. However, "[i]n the absence of a statutory right to prejudgment interest,

Texas law allows for an award of equitable prejudgment interest under *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985)." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010) (quoting *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996)). "Under this standard, 'an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances.'" *Id.* (quoting *Bituminous*, 75 F.3d at 1057).

"Prejudgment interest, including an equitable award of prejudgment interest, is calculated in accordance with chapter 304 of the Texas Finance Code." *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017) (citing *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 414–15 (5th Cir. 2011)). "Thus, prejudgment interest accrues as simple interest on the amount of a judgment, beginning on the earlier of the 180th day after written notice of the claim or the date suit is filed and ending on the day preceding the date judgment is rendered. . . ." *Id.* (first citing *Arete*, 643 F.3d at 414–15; and then citing Tex. Fin. Code Ann. §§ 304.003(c), 304.103, 304.104).

Here, Plaintiff is the prevailing party, Defendant has not opposed Plaintiff's request for prejudgment interest, and there are no exceptional

circumstances precluding an award of prejudgment interest. Accordingly, the Court is of the opinion that Plaintiff's request for prejudgment interest should be granted. Plaintiff provided formal notice of its claim to Defendant on August 3, 2017. Aff. Ex. F. The 180th day after the date of the formal notice is January 30, 2018. As January 30, 2018, is earlier than the filing date in this case, October 26, 2018, the prejudgment interest accrues beginning on January 30, 2018.

### 4. Post-Judgment Interest

Finally, regarding post-judgment interest, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." *Id.* "Interest shall be computed daily to the date of payment . . . and shall be compounded annually." § 1961(b).

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiff Nautilus Insurance Company a/s/o Lariat Builders Group Corporation's "Motion for Entry of

Default Judgment" (ECF No. 16) is **GRANTED IN PART AND DENIED IN PART**.

IT IS FURTHER ORDERED that **DEFAULT JUDGMENT** is hereby **ENTERED** in favor of Plaintiff Nautilus Insurance Company a/s/o Lariat Builders Group Corporation, and against Defendant A Best American Roofing Company, LLC, as to Plaintiff Nautilus Insurance Company a/s/o Lariat Builders Group Corporation's negligence claim, pursuant to Federal Rule of Civil Procedure 55(b)(2).

IT IS FURTHER ORDERED that Plaintiff Nautilus Insurance Company a/s/o Lariat Builders Group Corporation is **AWARDED** judgment of $77,183.13.

IT IS FURTHER ORDERED that Defendant A Best American Roofing Company, LLC **PAY** pre-judgment interest at the rate of 5.5% beginning on January 30, 2018, and ending on the day preceding the date this judgment is issued.

IT IS FURTHER ORDERED that Defendant A Best American Roofing Company, LLC **PAY** post-judgment interest at the rate of 2.4% until the judgment imposed herein is paid in full, with interest to be compounded annually.

**IT IS FURTHER ORDERED** that Plaintiff Nautilus Insurance Company a/s/o Lariat Builders Group Corporation is **AWARDED** costs, to be taxed against Defendant A Best American Roofing Company, LLC. Plaintiff shall **PREPARE** and **FILE** a proposed bill of costs no later than fourteen days after the entry of this Order, and shall **SERVE** its bill of costs on Defendant A Best American Roofing Company, LLC.

**IT IS FURTHER ORDERED** that all settings in this matter are **VACATED**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the **CLERK** shall **CLOSE** this matter.

**SIGNED** this **3rd day** of **April, 2019**.

**PHILIP R. MARTINEZ**
**UNITED STATES DISTRICT JUDGE**